UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALANA PATRICE BOHRER,

                                      Plaintiff,

                                             v.

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

                                                       DECISION AND ORDER

                                                       17-CV-6794L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On March 27, 2009, plaintiff, then forty years old, filed an application for Supplemental Security Income benefits alleging an inability to work since July 8, 2007. (Dkt. #8-2 at 10, Dkt. #8-3 at 155). Her application was initially denied, and plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Joseph Grow. ALJ Grow issued an unfavorable decision on September 21, 2010. Plaintiff appealed to the Appeals Council, which remanded the matter for further proceedings, including the consideration of new and material evidence. Supplemental proceedings were conducted before ALJ Connor O'Brien, and ALJ O'Brien issued a second unfavorable decision on January 25, 2013. (Dkt. #8-2 at 10-22). Plaintiff appealed that decision to this Court, which reversed and remanded the matter by Decision and Order dated May 6, 2016 (14-CV-6464, Dkt. #16), with instructions that the ALJ issue a new decision after giving greater and more detailed consideration to the medical opinions of record.

The ALJ held a supplemental hearing on December 14, 2016, at which vocational expert Peter A. Manzi testified. The ALJ issued a third unfavorable decision on September 5, 2017, finding plaintiff not disabled. Plaintiff now appeals.

The plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) remanding the matter for the calculation and payment of benefits (Dkt. #11), and the Commissioner has cross moved for judgment on the pleadings affirming the Commissioner's decision (Dkt. #15).

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision recites detailed findings of fact, and sets forth the evidence upon which they rest. Upon careful review of the complete record, I believe that the ALJ applied the correct legal standards, and that her finding that plaintiff is not totally disabled is supported by substantial evidence.

In examining plaintiff's application, the ALJ summarized plaintiff's medical treatment records, largely reflecting injuries incurred in a 2007 motorcycle accident: cervical spine fusion and degenerative disc disease of the cervical spine, mild degenerative disc disease of the lumbar spine, left shoulder impingement, asthma, history of left knee perpatellar bursitis, lateral epicondylitis of the right elbow (commonly known as "tennis elbow"), and trigger finger. (Dkt.

#8-8 at 882). Upon review of the evidence of record, the ALJ determined that plaintiff retained the residual function capacity ("RFC") to perform sedentary work with a sit/stand option that allows her to change position every 45 minutes for 5 minutes without leaving her workstation. She can no more than occasionally push, pull, reach overhead, reach with her left non-dominant arm, turn her head 45 or more degrees in any direction, kneel or crawl. She can no more than occasionally climb ladders, ropes or scaffolds. She can tolerate no more than occasional exposure to extreme heat or cold, wetness, humidity and airborne irritants. (Dkt. #8-8 at 884). When presented with this RFC as a hypothetical at the hearing, the vocational expert testified that such an individual would not be able to perform to plaintiff's past relevant work as a dancer, bar waitress, bartender or manicurist, but could perform the positions of order clerk, preparer, or brakes linings coater. (Dkt. #8-8 at 894-95).

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, and that the ALJ erred in her assessment of the medical opinions of record.

### A. Treating Physician Opinions

Under the treating physician rule which was applicable at the time the ALJ's decision was rendered, the opinion of a claimant's treating physician is entitled to controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v.* Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. §404.1527(c)(2)). However, an opinion need not be given controlling weight if it conflicts with "other substantial evidence in the record," *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), since "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Where, as here, the ALJ declines to afford controlling weight to a

treating physician's opinion, she must set forth "good reasons" for the decision and consider several factors in determining the appropriate weight, such as: (1) the length, nature, and extent of the treating relationship; (2) the supportability of the physician's opinion; (3) the consistency of the physician's opinion with the record as a whole, and (4) the specialization of the physician. 20 C.F.R. §§404.1527(c)(2)-(5). *See also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff's treating neurologist, Dr. Natan Khishchenko, completed an RFC assessment of plaintiff on November 2, 2012 (more than six months after plaintiff's spinal fusion surgery). (Dkt. #8-7 at 856-59). Dr. Khishchenko opined that plaintiff's cervical myelopathy with nerve root compression and attendant pain and weakness would "frequently" interfere with her ability to maintain attention and concentration to complete even simple tasks. Dr. Khishchenko further stated that plaintiff could tolerate moderate work stress and walk six blocks, sit for an hour at a time, and stand for 20 minutes at a time. In an eight-hour workday, plaintiff could stand and walk for two hours and sit for six hours. He indicated that plaintiff needed to change positions at will. She can lift and carry less than ten pounds frequently, ten pounds occasionally, and twenty or more pounds rarely. She can no more than occasionally move her head in any direction and can frequently hold her head in a static position. She can occasionally twist, stoop, crouch, squat and climb, engage in fine motor manipulation 50% of the time, and reach 100% of the time. Finally, Dr. Khishchenko opined that plaintiff would miss about 2 days of work per month due to her symptoms. (Dkt. #8-7 at 859).

Acknowledging his status as a treating physician, the ALJ accorded "some" weight to Dr. Khishchenko's opinion, crediting much of it in her RFC finding but rejecting Dr. Khishchenko's opinions concerning hand limitations, attention and concentration deficits, and absenteeism, and incorporating less-stringent limitations concerning a sit/stand option. As the ALJ noted, the hand

4

and attention limitations that she rejected appeared to conflict with plaintiff's activities of daily living, including part-time work as a dancer (which included performing a dance routine involving acrobatic movements, consistent with work at the "heavy" exertional level) and bartender, and with plaintiff's own testimony that she has no difficulty paying attention. (Dkt. #8-6 at 383).

The ALJ gave "little" and "little to no" weight to the opinions of treating internist Dr. Grama Jagadish, who completed RFC assessments of plaintiff in March 2011 (prior to her spinal fusion surgery), and in November 2012 (seven months after the spinal fusion surgery). (Dkt. #8-7 at 793-96, 860-64, 865-69). The initial opinion noted significant limitations in walking, standing, sitting, lifting and carrying, and indicated that plaintiff required surgery and would require 4-6 weeks of recovery time thereafter. The later opinion indicated that plaintiff suffered from chronic pain in her neck, elbows and back, as well as depression. Dr. Jagadish opined that plaintiff's pain and other symptoms would frequently interfere with her ability to attend and concentrate, that she would be incapable of low stress jobs and unable to walk a full city block. Dr. Jagadish opined that plaintiff could sit and stand for no more than 30 minutes at a time, stand and walk for 4 hours and sit for 6 hours in an 8-hour workday, and would need to walk every 30 minutes for 5 minutes, change positions at will, take unscheduled breaks, and elevate her legs. She would never be able to move her head or hold it in a static position, and could not twist, stoop, crouch, squat, or climb ladders. Finally, Dr. Jagadish stated that plaintiff would miss at least four days of work per month due to her symptoms. (Dkt. #8-7 at 860-64).

In rejecting Dr. Jagadish's opinions, the ALJ noted that there was no evidence that plaintiff suffered from depression or any other mental health problems, or that she had any difficulty with attention and concentration. The ALJ further found that the drastic limitations Dr. Jagadish described, such as the inability to move plaintiff's head in any direction and inability to walk one

5

city block, were inconsistent with the level of medical treatment she received (narcotic pain medications, epidural injections and trigger point injection), and with her activities of daily living, including working as an exotic dancer though at least March 2012.

On December 25, 2012, treating physician Dr. Clifford Ameduri authored an opinion finding that plaintiff was very limited in walking, standing, sitting, pushing, pulling, bending, lifting and carrying, and would be unable to participate in any activity except for treatment or rehabilitation for the following 12 months. He found that plaintiff's pain and other symptoms would constantly interfere with her attention and concentration, and that she would be unable to perform even low stress jobs, or to walk one city block. Dr. Ameduri opined that plaintiff would require a job that allowed her to get up *every minute* and walk for 1-2 minutes, and to shift positions at will, in addition to taking unscheduled 5-minute breaks every hour, and elevating her legs 25% of the time. Dr. Ameduri found that plaintiff could never lift any amount of weight, and could never move her head in any direction, twist, stoop, bend, crouch, squat, or climb ladders. Further, plaintiff could never reach in any direction, and could use her hands and fingers only 25% of the time. Finally, Dr. Ameduri opined that plaintiff would be absent from work for more than four days per month. (Dkt. #8-7 at 872-76).

A second opinion was rendered by Dr. Ameduri on May 5, 2015, which described more moderate restrictions, and speculated that plaintiff could perform four hours of sedentary work per day as long as it did not involve any lifting over ten pounds, nor any climbing, kneeling or squatting. (Dkt. #8-13 at 1680-82).

The ALJ acknowledged Dr. Ameduri's status as a treating physician. She rejected his December 2012 opinion as inconsistent with the record, and with plaintiff's daily activities: "[t]he doctor's opinion that the claimant would be unable to walk one city block or move her head is not

6

consistent with a person who works at least part time as a dancer." (Dkt. #8-8 at 891). She gave "some" weight to Dr. Ameduri's May 5, 2015 opinion, to the extent that it was consistent with Dr. Ameduri's objective observations: for example, in June 2014 and January 2015 examinations, Dr. Ameduri noted some measurable spinal flexion limitations, but also noted intact and full motor strength and muscle tone in plaintiff's upper and lower extremities and hands, and negative straight leg raising tests. (Dkt. #8-7 at 872-76, Dkt. #8-13 at 1680-82). The ALJ rejected the more dramatic limitations in Dr. Ameduri's May 5, 2015 opinion as inconsistent with his objective findings, and with the plaintiff's activities.

With respect to the opinions of treating neurosurgeons Dr. Seth Zeidman and Dr. Pierre Girgis, the ALJ accorded "little" weight, due to the fact that those opinions focused solely on plaintiff's temporary limitations during the rehabilitation and recovery period immediately after her spinal fusion surgery, and did not, on their face, describe any limitations that would meet the 12-month durational requirement. (Dkt. #8-7 at 793-96; Dkt. #8-8 at 889).

**B. Other Medical Opinions**

The ALJ likewise considered an RFC report by consulting internist Dr. George Alexis Sirotenko, who examined plaintiff on May 7, 2009, two years after the alleged onset date and three years prior to plaintiff's spinal fusion surgery. (Dkt. #8-7 at 507-09). Dr. Sirotenko found that plaintiff's gait and station were normal, that her hand and finger dexterity and grip strength were 5/5. Plaintiff's strength and reflexes were normal, but she had patchy sensory loss in her left arm. Spinal flexion showed some limitations, but plaintiff had full range of motion in her arms and legs. Dr. Sirotenko opined that plaintiff had mild limitations regarding her left arm (overhead use, or reaching behind her head or back), and mild limitations with regard to forward flexion, extension and rotation of the cervical and lumbar spine. (Dkt. #8-7 at 809). The ALJ gave "some" weight

7

to Dr. Sirotenko's opinion due to its consistency with the evidence of record, and with plaintiff's activities as a part-time dancer and bartender.

Initially, the ALJ's consideration of plaintiff's part-time work as a dancer and bartender for several years during the period in question – something which the ALJ found drastically undermined plaintiff's claim of total disability – was entirely proper, as "[t]he Commissioner's regulations provide that part-time work, even if not substantial gainful activity, may show a claimant is able to do more than they actually did." *Downs v. Colvin*, 2016 U.S. Dist. LEXIS 131290 at *12 (W.D.N.Y. 2016).

Furthermore, while "the ALJ's conclusion [did] not perfectly correspond with any of the opinions of medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished opinion). I find that the ALJ's discussion of each medical source opinion took sufficient account of the relevant factors, and that the ALJ provided good reasons for the weight she assigned to each one.

I have considered the rest of plaintiff's claims, and find them to be without merit. On balance, I find that the record simply does not support plaintiff's claim of total disability: I concur with the ALJ and conclude that there is substantial evidence to support her determination as to plaintiff's residual functional capacity. There is no dispute that the positions identified by vocational expert Peter A. Manzi at the plaintiff's hearing are consistent with this RFC, and with plaintiff's age, educational background and past work experience. I find no reason to modify the ALJ's decision.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is granted. The Commissioner's decision that plaintiff was not disabled is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 12, 2019.